**ROOT et al. v. UNITED STATES.**

District Court, S. D. Florida.

Oct. 7, 1931.

Campbell & McLean, of Tampa, Fla., for plaintiffs.

Wilburn P. Hughes, U. S. Atty., of Jacksonville, Fla., and Raymond F. Brown, Sp. Asst. to the U. S. Atty., of Miami, Fla., for the United States.

AKERMAN, District Judge.

This cause comes on for final hearing upon the petition of the surviving executors of the estate of Charles Albert Root, deceased, the answer of the government, and the testimony and exhibits.

The petition alleges the death of Charles A. Root, testate, November 26, 1921; and that thereafter, on the 25th day of November, 1922, his executors duly filed returns for federal estate tax with the collector of internal revenue of the property of the estate, and they thereupon paid such collector the amount of federal estate tax that the said executors conceived to be due upon the estate of the deceased, but did not include in the total of said estate of said decedent seventy-seven shares of the capital stock of the Warnell Lumber & Veneer Company, a corporation, transferred by the decedent to Lucy G. Root, his wife, on May 17, 1920, which stock was afterwards sold by the said Lucy G. Root on or about the 16th day of March, 1921, for the sum of $58,268.66; and thereafter, on April 26, 1924, the Commissioner of Internal Revenue conceived that the said shares of stock should be included in the gross estate of the deceased, assessed against said estate an additional tax of $1,402.76, which amount was paid by the petitioners on June 13, 1925; whereupon the petitioners filed a claim for refund which was disallowed on October 25, 1928; that the deficiency tax of $1,402.76 levied, assessed, and collected by the Commissioner of Internal Revenue was upon the value of the aforesaid shares of stock, for

the reason that such stock has been transferred by the deceased within two years prior to his death, and was therefore deemed by the Commissioner of Internal Revenue to have been made in contemplation of death, within the intent and meaning of section 402 of the Revenue Act of 1921 (42 Stat. 278), and was therefore determined by the said Commissioner to have been a part of the decedent's gross estate. The petition is brought to recover the deficiency tax of $1,402.76 upon the ground that the transfer of said stock by the deceased to his wife was for a good and valuable consideration, and not made in contemplation of death, and was therefore erroneously and illegally collected.

The respondent answered, admitting all of the allegations in plaintiffs' petition, except that it denied that the aforesaid transfer of stock was for a good and valuable consideration, and was not made in contemplation of death, and that the same should not have been included by the Commissioner of Internal Revenue as a part of the decedent's gross estate, and denied that the tax of $1,-402.76 assessed upon the value of said shares of stock was erroneously and illegally collected; on the contrary, respondent alleges that the transfer of said stock was a gift from the decedent to his wife, Lucy G. Root, and was not based on a good and valuable consideration, but that said gift of stock was made by the decedent to his wife in contemplation of the decedent's own death, and the value of said shares of stock was properly and legally included as a part of the decedent's gross estate for the purpose of measuring the federal estate tax thereon under the provisions of the Revenue Act of 1921, and denied that said tax was improperly collected, and denied petitioners' rights to recover any sum whatsoever on account thereof.

The testimony shows this state of facts, which I find from the testimony:

On the 17th day of May, 1920, Charles Albert Root was in good general health and excellent spirits. There is no indication that he had any thought or suspicion of impending death. He was a man sixty-four years of age, unusually active and strong for his age, and had never suffered from any serious illness, and was in good physical and mental condition.

Furthermore, he possessed a cheerful, hopeful, and optimistic disposition. His mind was bright, and several months after the transfer of the stock in question he was able physically and mentally, as the president of the Warnell Lumber & Veneer Company, to work out details of the sale of said business which was a transaction involving $880,000. Both prior and subsequent to the making of the transfer to his wife and up to his last illness, his mind was clear, and he was competent to transact and did transact business. The doctor, the only one who, so far as the evidence shows, ever prescribed or treated him for any illness except his last illness, testified that at the date of the transfer there was nothing in the decedent's physical condition that would lead him to believe he was in danger of a sudden or early death, and that he considered the decedent a vigorous man for his age.

The transfer of the stock by Charles Albert Root to his wife on May 17, 1920, was based upon tangible consideration. It was more than a mere voluntary donation; it was an attempt on the part of the decedent to reimburse his wife for a large amount of money, approximately $8,000, which she had advanced to him over a long period of years to aid him in his business ventures. His statements at divers times for over a period of twenty years, to his business associates, William and Albert Schneider, that he expected and intended to transfer stock to his wife for the funds which his wife had furnished him, was carried out on May 17, 1920, when the transfer was made on the books of the corporation. The evidence shows that Albert Schneider suggested to Charles Albert Root that he (Charles A. Root) his brother, William Schneider, and himself had received funds from their respective wives, and all three thereupon transferred stock in the Warnell Lumber & Veneer Company to their wives for funds so advanced. In addition to this consideration for the transfer, the auditor of the Warnell Lumber & Veneer Company advised Charles Albert Root that the amount of income tax would be greatly reduced by a transfer of a part of his stock to his wife. It therefore appears that his action was motivated by a recognition of his moral obligation to reimburse his wife for her contributions and by a desire to fulfill that obligation. The transfer of this stock was considered and accepted by Lucy G. Root, the wife, as an absolute transfer by the decedent.

I further find as a fact that Charles A. Root did not execute a will until the 24th day of June, 1921. It is significant that the deceased did not execute his will until more than thirteen months after the transfer of the seventy-seven shares of stock to his wife,

and the fact that this will provided for an equal disposition of his property between his wife and children clearly shows that the transfer of the stock to his wife in May, 1920, was not in the nature of a testamentary disposition.

I further find that the transfer of the seventy-seven shares of stock in the Warnell Lumber & Veneer Company was not made by Charles A. Root to Lucy G. Root in contemplation of death, as provided in the provisions of the Revenue Act of 1921.

From these facts I find as a matter of law that the transfer of the said seventy-seven shares of stock to the said Lucy G. Root was for a good and valuable consideration, and not made in contemplation of death, and that the same should not have been included by the Commissioner of Internal Revenue as a part of the testator's gross estate, and that the tax of $1,402.76 assessed upon the value of said seventy-seven shares of stock was erroneously and illegally collected, and that petitioners are entitled to recover from the respondent the said sum of $1,402.76, together with interest thereon at the rate of 6 per cent. per annum from the 13th day of June, 1925.

A judgment may be prepared pursuant to the above findings.